IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**STATE OF NEW MEXICO**, ex rel.
**DEPARTMENT OF TRANSPORTATION**,

      Plaintiff,

vs.                                                                                     No.  **CIV 03-1343 MCA/WDS**

**QWEST COMMUNICATIONS
INTERNATIONAL, INC.**,
**QWEST CORPORATION**, and
**QWEST COMMUNICATIONS
CORPORATION**,

      Defendants.

**MEMORANDUM OPINION AND ORDER OF REMAND**

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Remand* (Doc. 7), filed January 9, 2004.  Having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, the Court finds that this case does not satisfy the statutory requirements for subject-matter jurisdiction and must be remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico.

**I.      BACKGROUND**

On October 24, 2003, Plaintiff, State of New Mexico, ex rel. Department of Transportation (NMDOT) brought a reimbursement claim against Defendants Qwest Communications International, Inc., Qwest Corporation, and Qwest Communications

Corporation (Qwest) seeking construction-delay damages allegedly incurred as a result of Qwest's failure to relocate telecommunication utility facilities located within a right-of-way scheduled for repairs.  NMDOT filed the action in the First Judicial District Court, County of Santa Fe, State of New Mexico.  (Doc. 1, Exh. A).  Qwest removed the action to this Court pursuant to 28 U.S.C. § 1441 on the ground that federal jurisdiction exists because the amount in controversy exceeds $ 1 million and there is complete diversity of citizenship between the parties.  (Doc. 1 at 5).  Qwest, which is incorporated in states other than New Mexico and claims its principal place of business as Colorado, concedes that the State of New Mexico is not a citizen for purposes of 28 U.S.C. § 1332.  Qwest asserts, however, that NMDOT, not the state, is the real party in interest in this case and that NMDOT, which is essentially corporate in character and not merely an arm of the state, is a citizen within the meaning of 28 U.S.C. § 1332.  (Id. at 2, 5).

     NMDOT now moves, pursuant to 28 U.S.C. § 1447, to remand the action to state court.  According to NMDOT, because it is no more than an alter ego of the state—the real party in interest—it is not a citizen for purposes of 28 U.S.C. § 1332, and therefore this Court lacks jurisdiction.  (Docs. 7, 8).  Qwest objects, citing, among other things, a list of statutory provisions it claims supports a finding that NMDOT acts as a corporation independent of the state.  (Doc. 16 at 1-5).  NMDOT replies that an overall review of the applicable statutory sections, particularly in light of the factors federal courts typically consider in determining whether they may exercise diversity jurisdiction over a state entity, establishes that NMDOT is merely an alter ego of the state.  (Doc. 21).

**II.     ANALYSIS**

Removal of a state-court action to a federal district court is controlled by 28 U.S.C. § 1441, which states, in relevant part,

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).  Pursuant to 28 U.S.C. § 1332, a federal district court may exercise diversity jurisdiction over a civil action if the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.  See 28 U.S.C. § 1332(a)(1).  If, however, it appears that the district court lacks jurisdiction over the matter, it must remand the action to the state court from which it was removed.  See 28 U.S.C. § 1447(c).

A state is not a citizen for purposes of diversity jurisdiction under 28 U.S.C. § 1332. See State Highway Comm'n of Wyo. v. Utah Const. Co., 278 U.S. 194, 200 (1929). Consequently, there is no diversity jurisdiction in an action brought against a state highway commission that is nothing more than an arm or alter ego of the state.  See id. at 199.  In that case, the state is the real party in interest.  See id. at 200.  If, however, the state-created agency is found to be the real party in interest, diversity jurisdiction may exist.  Kan. Tpk. Auth. v. Abramson, 275 F.2d 711, 713 9 (10th Cir. 1960).  In finding that the Turnpike Authority, and not the State of Kansas, was the real party in interest in the case before it, the Abramson court pointed out, among other things, that the state legislature had created the

Turnpike Authority "as a body corporate and politic" and that the Authority, which was not under the supervision of the state or any state agency, was empowered to perform certain proprietary functions without any obligation on the part of the state. Id.

In deciding whether a state agency is merely an alter ego of the state, making the state the real party in interest, courts consider the following factors: (1) whether the statute creating the agency authorizes it to sue or be sued in its own name; (2) whether the statute creating the agency contains a provision that the agency shall be deemed to be performing an "essential governmental function"or the like; (3) the degree of autonomy with which the agency functions; (4) the treatment of the agency by state courts; (5) whether a statute authorizes the agency to take property in the name of the state; (6) whether the agency has the power to take property in its own name; (7) whether the agency has corporate status; (8) the extent to which the agency is financed independently of the state treasury; and (9) whether the state has a financial or other beneficial interest in the outcome of the litigation, or in the affairs of the agency such as the possibility that state resources may be used to satisfy a judgment against the agency.  32A AM. JUR. 2D *Federal Courts* § 860 (1995), see also  David A. Johns, J.D., Annotation, *State Agencies, or Officers Thereof, as Citizens for Purpose of Federal Diversity Jurisdiction Under 28 U.S.C.A. § 1332*, 6 A.L.R. FED. 615 (1971).  The fact that there appears to be little agreement among the circuits as to which of the above-listed factors should be accorded more or less weight might help explain why some state transportation agencies have been deemed citizens for purposes of diversity jurisdiction while others have not.  See generally 6 A.L.R. FED. 615, § 14 (listing cases in

which state highway or turnpike agencies were held to be or not to be citizens subject to diversity-of-citizenship jurisdiction).

In addition to the factors discussed by the appellate court in Abramson, Tenth Circuit district courts that have squarely addressed the issue presented here suggest that the most important indicia of the state as the real party in interest are the language of the statute creating the agency and state-court opinions bearing upon the status of the agency.  See Logistics Express, Inc. v. Kan. State Dep't of Transp., 1991 WL 287212; Blum v. Toyota Motor Sales, U.S.A., Inc., 1991 WL 50258.  For example, a study of pertinent Kansas state-court decisions and applicable Kansas statutes led the Logistics Express court to conclude that the Kansas Department of Transportation was not a corporate body, was not vested with the power to sue and be sued in its own name, and made decisions that were either overseen by the state finance council or subject to final approval by the governor.  Logistics Express, Inc., 1991 WL 287212.

A thorough examination of the relevant factors listed above, with an emphasis on the statutes creating NMDOT and the agency's treatment by state courts, see Logistics Express, Inc., 1991 WL 287212 and Blum, 1991 WL 50258, persuades the Court that NMDOT is a mere arm of alter ego of the State of New Mexico; consequently, the state is the real party in interest in this action.  As a preliminary matter, the Court notes that the New Mexico Constitution very clearly states "[t]here is created a 'state highway commission.'"  N.M. Const. art. V, § 14.  Indeed, the very manner of the creation of the highway commission, out of which NMDOT was subsequently carved, demonstrates that NMDOT is anchored to the

constitution in a way that other state agencies are not.  See N.M. S<small>TAT</small>. A<small>NN</small>. § 67-3-6 (Michie 1978) (stating that "[a] department of government within the executive branch to be known as the 'state highway and transportation department' is established[,]" and that "[a]ll references contained in the NMSA 1978, as amended, and which refer to the 'state highway commission' . . . shall, wherever appropriate, be construed to refer to or to mean the state . . . transportation department.").

Turning to the New Mexico Statutes, a close reading of the sections at issue here reveals no express provision vesting NMDOT with the authority to sue or be sued in its own name.  See generally id. §§ 67-3-1 to 67-3-77.  NMDOT's rule-making power is broad.  Id. § 67-3-11 (2003).  Yet many of NMDOT's actions and decisions are overseen by the state or subject to final approval of the governor.  See id. § 67-3-2 (highway commissioners appointed by governor and confirmed by senate); § 67-3-10 (reports of or information respecting commission's meetings shall be furnished to governor by commission at his request); § 67-3-22 (transportation commission shall, on or before the first day of January of each year, make a report to the governor of all business transacted by the commission up to and including the thirtieth day of November, showing an itemized statement of money received and disbursed); § 67-3-72 (transportation bonds shall not be issued unless the state board of finance approves the issuance of the bonds, the principal amount of the bonds, and the maximum net effective interest rate on the bonds).

Similarly, many NMDOT actions are either undertaken on behalf of the state or binding on the state.  See e.g. § 67-3-54 (2003) (making agreements for projects involving

the construction and maintenance of certain flight strips, airports and access roads binding on the state); § 67-3-71.1 (2001) (agreements pertaining to rights of way crossing the Navajo Nation shall be developed from negotiations between the Navajo Nation and the state). Importantly, NMDOT is authorized to

> bring and maintain in the name of the state all actions and proceedings deemed necessary by the state transportation commission for the condemnation of rights of way for public highways or for the removal or condemnation of buildings or other improvements that encroach in whole or part upon the rights of way of public highways.

§ 67-3-12(E) (2003). Moreover, "[t]he attorney general of the state of New Mexico shall appear in and prosecute all such [condemnation] cases on behalf of the state upon request of the state transportation commission." Id. Further evidence of NMDOT's status as an arm of the state is the fact that it draws its financing largely from the state treasury. See e.g. § 67-3-28.2 (1995) ("There is created in the state treasury the 'local governments road fund.'"); § 67-3-65 (1980) ("The 'state road fund' is created within the state treasury.").

Finally, the Court has analyzed the few state-court decisions to have considered the issue and finds that there is no question that those courts view NMDOT as an alter ego of the state. See State Bd. of Cty. Comm'rs of Grant County. v. Burks, 75 N.M. 19, 22, 399 P.2d 920, 922 (N.M. 1965) ("It is implicit in both Dougherty [v. Vidal, 37 N.M. 256, 21 P.2d 90 (1933)] and [State ex rel. Highway Comm'n v.] Town of Grants [69 N.M. 145, 364 P.2d 853 (1961)] that the State Highway Commission is only an arm or agency of the state, and that a suit by or against the commission is one by or against the state itself.").

Based on the foregoing, the Court concludes that the State of New Mexico, not NMDOT, is the real party in interest in this case. For that reason, the Court is without jurisdiction to consider the matter. See State Highway Comm'n of Wyo., 278 U.S. at 200. Accordingly, this action must be remanded to the state court from which it was removed. See 28 U.S.C. § 1447(c).

**IT IS, THEREFORE, ORDERED** that Plaintiffs' *Motion to Remand* (Doc. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action be and hereby is remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico pursuant to 28 U.S.C. § 1447(c), each party to bear its own costs and attorneys' fees.

**SO ORDERED**, this **24th** day of **March, 2004**, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
*United States District Judge*